UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHERYL BETH SIEGEL, | ) | Case No.: 1:13 CV 1626 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

The Commissioner of Social Security (the "Commissioner" or "Defendant") denied disability benefits to the claimant, Sheryl Beth Siegel ("Plaintiff" or "Siegel") in the above-captioned case. Siegel sought judicial review of the Commissioner's decision, and this court referred the case to Magistrate Judge George J. Limbert ("Judge Limbert" or "Magistrate Judge"), for preparation of a Report and Recommendation ("R&R"). Both parties submitted briefs on the merits. Siegel sought an order reversing the Commissioner's decision and finding that she is entitled to benefits. The Commissioner sought final judgment upholding the decision below. Judge Limbert submitted his R&R on August 12, 2014, recommending that the Administrative Law Judge's ("ALJ") decision be reversed and remanded. (ECF No. 19.) The Commissioner filed a Memorandum (ECF No. 20), indicating it does not object to the Magistrate Judge's Recommendation. For the following reasons, the court adopts Judge Limbert's R&R, and remands the case for further proceedings consistent with this Order.

## I. BACKGROUND

Siegel filed a Social Security Income ("SSI") application on March 27, 2009, claiming that she became unable to work on September 30, 2008. (Tr. 158–78.) Her application was denied initially and on reconsideration; and by an ALJ after a hearing at which Plaintiff, who was represented by an attorney, testified. (Tr. 104, 121, 22.)

The ALJ considered the case *de novo* and on December 19, 2011 found, in relevant part, that: (1) Plaintiff had not engaged in substantial gainful activity since September 30, 2008 (Tr. 27); (2) Plaintiff suffered from severe impairments, including osteoarthritis, degenerative joint disease in the knees, cervical degenerative disc disease, a mood disorder, a substance addiction disorder in remission, and Sjögren's syndrome (Tr. 28); (3) Plaintiff's several impairments did not meet or equal any of the listed impairments for SSI purposes (Tr. 29–30); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work (Tr. 30–31); and (5) in light of Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 33–34.)

The ALJ's decision became the final decision of the agency when the Appeals Council denied review of that decision. (Tr. 1.) On July 26, 2013, Plaintiff commenced a civil action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (Compl., ECF No. 1.) Plaintiff filed her Brief on the Merits on January 15, 2014. ("Pl.'s Merits Brief," ECF No. 16.) The Commissioner filed her Brief on March 14, 2014. (ECF No. 18.) Plaintiff challenged three separate aspects of the ALJ's decision in her case. First, Siegel argued that

the ALJ's finding that her osteoarthritis of the hands, headaches, Postural Orthstatic Tachycardia Syndrome ("POTS"), and fibromylagia were not severe impairments was not supported by substantial evidence. (Pl.'s Merits Brief at 14–17.) Second, Siegel argued that the ALJ's finding that her cervical spine disorder does not meet or equal an impairment contained in the Social Security Administration's ("SSA") Listings of Impairments was not supported by substantial evidence. (*Id.* at 17–19.) Third, with respect to the ALJ's RFC determination, Siegel argued that the ALJ erred in not considering her non-severe impairments in the RFC analysis, and in his failure to consider "objective, well-supported" medical findings to support his RFC determination. (*Id.* at 20.)

On July 26, 2013, this court referred Siegel's Complaint to Judge Limbert for the preparation of an R&R. Judge Limbert issued his R&R on August 12, 2014. (ECF No. 19.) Judge Limbert concluded that the ALJ's finding that Siegel did not engage in substantial gainful activity was supported by the evidence. (R&R at 14.) Judge Limbert also concluded that the ALJ's finding that Plaintiff's hand arthritis, headaches, firbromyalgia, and POTS were not severe was not reversible error. Although Judge Limbert did not determine whether this finding was supported by substantial evidence, he concluded that because the ALJ considered the non-severe impairments in the subsequent steps of his analysis, there was no reversible error. (*Id.* at 17–18.) Finally, Judge Limbert concluded that the ALJ's finding that Plaintiff's cervical impairments do not meet or equal one of the impairments in § 1.04A of the SSA's Listing of Impairments was not supported by substantial evidence because the ALJ failed to adequately articulate the reasons for reaching his conclusion. Specifically, Judge Limbert concluded that the ALJ "provide[d] no medical evidence to show how he reached his conclusion," (*Id.* at 20) and that the ALJ "failed to articulate why

-3-

Plaintiff's impairments in combination failed to equal a Listing." (*Id.* at 20.) Judge Limbert did not address the ALJ's determination with regard to RFC, stating that the step three analysis on remand could affect the ALJ's findings on the issue of RFC. (*Id.* at 21.)

The Commissioner filed her Response to the R&R on August 27, 2014. ("Def.'s Resp.," ECF No. 20.) In it, the Commissioner stated that she does not intend to object to Judge Limbert's determinations. By declining to object, the Commissioner has waived the right to appeal the Magistrate Judge's recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). After careful *de novo* review of the Report and Recommendation and all other relevant documents, the court adopts Judge Limbert's R&R, and remands the instant case for further proceedings in accordance with this Order.

## II. LEGAL STANDARDS

Judicial review of an ALJ's decision denying SSI benefits is limited to determining whether substantial evidence supports the ALJ's decision and whether the ALJ applied the correct legal standards in reaching her conclusion. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Under 42 U.S.C. § 405(g), the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Sixth Circuit has defined "substantial evidence" as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

In order to be entitled to SSI, a plaintiff must establish the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months, and that the

impairment renders him unable to engage in any substantial gainful employment. 42 U.S.C. § 423(d)(1)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Under the Social Security Act, the Secretary must follow a "five-step sequential process" in evaluating disability claims. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920. First, plaintiff must demonstrate that she is not currently engaged in substantial gainful activity at the time that she seeks SSI. *Heston*, 245 F.3d at 534. Second, the ALJ considers the medical severity of the applicant's impairments or combination of impairments. *Id.* Third, if the applicant has a severe impairment, the ALJ determines whether the impairment (or combinations thereof) meets or equals one of the SSA's listed impairments. *Id.* If so, the applicant is presumed to be disabled under the Act. *Id.* Fourth, the ALJ determines whether the applicant's RFC permits the performance of past relevant work. *Id.* Fifth, even if plaintiff's impairment or impairments prevent her from doing past relevant work, plaintiff is not disabled within the meaning of the Act if other jobs exists in the national economy that plaintiff can perform. *Id.*; *see also* 20 C.F.R. §§ 404.1520(a)(4)(I)-(v) (setting forth five-step process), 416.920(a)(4)(I)-(v) (same).

### III. LAW AND ANALYSIS

#### A. The ALJ's Step-One Finding

At step one of the five-step evaluation process, the ALJ considered whether Plaintiff was engaged in substantial gainful activity since the alleged onset date. The court finds that Judge Limbert correctly concluded that the ALJ's finding at step one was not reversible error. At the administrative hearing, Plaintiff testified that she engaged in work as a taxi driver, but was unclear as to the duration of this work. (Tr. at 53–54, 65–66.) The ALJ determined that this testimony was vague and did not use it to support a finding of substantial gainful activity. (Tr. 27–28.) Judge

Limbert concluded that the testimony was irrelevant because of its vagueness. (R&R at 14.) The court agrees with Judge Limbert that this testimony is insufficient to support a finding of substantial gainful activity. Siegel's testimony does not indicate with certainty whether she performed this activity consistently or the precise period in which she performed the work. Consequently, the court finds that Judge Limbert was correct in this conclusion with respect to the ALJ's step-one analysis.

**B. The ALJ's Step-Two Finding**

At step two, the ALJ considered whether any of Plaintiff's alleged impairments are severe. The ALJ found that Plaintiff's osteoarthritis, degenerative joint disease in the knees, cervical degenerative disc disease, mood disorder, substance addiction disorder in remission, and diagnosis of Sjögren's syndrome were severe. (Tr. 28.) The ALJ found that Plaintiff's alleged lupus, osteoarthritis of the hands, fibromyalgia, and headaches were not severe impairments. (*Id.*) The ALJ stated that there was no evidence before him confirming a diagnosis of lupus, and that Plaintiff's diagnosis of POTS was "mere speculation" and "not confirmed by objective testing." (Tr. at 29.) With regard to Plaintiff's hand arthritis and headaches, the ALJ concluded that the diagnoses of Plaintiff's treating physicians, Plaintiff's "neat handwriting," and Plaintiff's ability to drive a taxi cab contradicted Plaintiff's allegations of severity. (Tr. at 28.) Finally, the ALJ stated that fibromyalgia "tender-point" testing revealed only 2 of 18 tender points for fibromalgyia. (Tr. 29.) But, as Judge Limbert correctly noted, this statement was error. The record indicates that tender-point testing revealed 16 of 18 tender points. (R&R at 17 n.1.) The court believes that this evidence, in addition to other evidence of Plaintiff's fibromyalgia symptoms, could well support a finding of severity.[1] Still, because the ALJ appeared to consider fibromyalgia in his RFC analysis,

---

[1] The Sixth Circuit has repeatedly recognized that fibromyalgia can be a severe and disabling impairment. *See, e.g.*, *Minor v. Comm'r Soc. Sec.*, 513 Fed. App'x

the court finds no reason to address this issue. Consequently, the court finds that Judge Limbert was correct to conclude that the ALJ's step two analysis was not reversible error.

**C. The ALJ's Step-Three Finding**

At step three of the five-step evaluation process, the ALJ considered whether any of the Plaintiff's severe impairments—cervical degenerative disc disease, mood disorder, substance addiction disorder in remission, and diagnosis of Sjögren's syndrome—met or equaled an impairment in the SSA's Listing of Impairments. (Tr. 29–30.) The ALJ stated, in reaching his conclusion that Plaintiff's impairments do not meet or equal a listed impairment, he "considered the opinion of the State Agency medical consultants who evaluated the issue at the initial and reconsideration levels of the administrative review process . . . [and the] Social Security Ruling." (Tr. 29.) With respect to Plaintiff's mental impairments, the ALJ considered whether they met or equaled the listings of 12.04 ("Affective Disorders") and 12.09 ("Substance Addiction Disorders"). The ALJ concluded that Plaintiff's ability to take care of herself, live independently, maintain social relationships, and her post-onset work activity provided substantial evidence that her impairments do not meet a listing. (Tr. 29.)

However, the ALJ did not provide any analysis of Plaintiff's physical impairments at step three, and failure to do so was reversible error. The Sixth Circuit has found reversible error where the ALJ "fail[ed] to analyze [a] physical condition in relation to the Listed Impairments." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011). The court in *Reynolds* explained that the ALJ "needed to actually evaluate the evidence, compare it to . . . the Listing, and give an

---

417, 434 (6th Cir. 2012); *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. App'x 852, 859-60 (6th Cir. 2011); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 778 (6th Cir.2008) (per curiam).

explained conclusion, in order to facilitate meaningful judicial review." *Id.* The record reflects that the ALJ failed to evaluate the medical evidence and compare it to the requirements for the listed impairment. Judge Limbert concluded that several diagnoses established Plaintiff's cervical spine disorder, and that this severe impairment could possibly meet Listing 1.04(A) ("Disorders of the spine"). (R&R at 19.) The ALJ made no mention of any diagnoses that describe or evaluate Plaintiff's cervical impairments. Furthermore, while the ALJ stated that he considered Listing 1.04, he articulated no reasons as to why Plaintiff's impairment did not meet this listing.

Additionally, the ALJ did not articulate why Plaintiff's injuries in combination did not meet or equal a listing. The record suggests that the totality of Plaintiff's impairments, including some existing prior to the last insured date, caused significant degenerative changes that further diminished Plaintiff's physical functioning. (Tr. 1097–98). The ALJ made no mention of this evidence. Although some record evidence evaluating Plaintiff's impairments in combination postdates the ALJ's decision, evidence of new developments in a claimant's condition can relate back if such developments "illuminate the claimant's condition prior to the expiration of insured status." *See e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Nagle v. Comm'r Soc. Sec.*, No. 98-3984, slip op. at 1 (6th Cir. Sept. 21, 1999). Thus, this evidence in the record is relevant to the ALJ's step-three analysis.

Consequently, the court agrees with Judge Limbert's determination that the ALJ's failure to specifically analyze Plaintiff's physical impairments in relation to a Listed Impairment was reversible error.

### D. The ALJ's Credibility Determination

At step four of the evaluation process, the ALJ evaluated Plaintiff's RFC to perform work, and therein evaluated Plaintiff's credibility. (Tr. 31.)  The ALJ held:

> After considering the evidence, I find claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are credible only to the extent of the limitations of the above residual functional capacity assessment.

Although he discussed the record evidence bearing on some of the relevant factors, including record evidence of Plaintiff's treatment history, daily activities, and previous work[2] (Tr. 31–32), the ALJ provided no clear explanation for why the record evidence militated in favor of his finding.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–49 (6th Cir. 2007) (holding ALJ erred in credibility determination where ALJ failed to provide specific reasons for finding on credibility in relation to the entire case record).  The ALJ's statement that Plaintiff is credible "only to the extent of the limitations of the above residual functional capacity" is vague, and impedes full meaningful review.  *See Rogers*, 486 F.3d at 248 n.5 ("The requirement that the Commissioner fully explain his determinations of the claimant's credibility is grounded, at least in part, upon the need for clarity in later proceedings.").  It should be noted that the ALJ briefly referenced Plaintiff's inconsistent admissions, and such inconsistencies could serve to diminish Plaintiff's credibility.  (Tr. 32.)  However, the ALJ provided no clear explanation as to how these inconsistencies factored into his credibility analysis or how he weighed them in relation to other evidence in the record.

---

[2] To note, Plaintiff argues that the ALJ used evidence that she had worked as a cab driver to determine whether she was disabled. (Pl.'s Merits Brief at 13.)  Here, Plaintiff is misguided.  The record demonstrates that the ALJ used this testimony in evaluating the credibility of Plaintiff's statements with regard to an RFC determination, not to determine whether she was disabled in the first instance.

The ALJ appeared to find that Plaintiff's daily activities and exercise militated against her credibility. (Tr. 31–32.) However, he did not consider Plaintiff's statements that some activity exacerbates her impairments. (Tr. 64–66.) Under SSR 96-7P, "the adjudicator *must consider* the entire case record, including . . . the individual's own statements about symptoms," and "[these statements] may not be disregarded solely because they are not substantiated by objective medical evidence." Additionally, the Sixth Circuit has suggested that the ALJ should keep analytically separate activities that a claimant performs, and the possible negative impact such activities have on a claimant's symptoms. *See Rogers*, 486 F.3d at 249 ("the fact that a [claimant] . . . remains active does not reflect the manner in which such activities may aggravate the [claimant's] symptoms"). Finally, while the ALJ recounted daily activities Plaintiff performs, such as "play[ing] video games," "car[ing] for a dog," and "visit[ing] her mother" (Tr. 32), "these somewhat minimal daily functions *are not comparable to typical work activities*." *Id.* at 248 (emphasis added). On remand, should the ALJ find it necessary to discuss Plaintiff's credibility, he should provide a clearer explanation for his credibility finding in relation to the entire record, including Plaintiff's own statements about her symptoms.

## IV. CONCLUSION

For the foregoing reasons, the court adopts Judge Limbert's Report and Recommendation. (ECF No. 34.) The ALJ's decision is hereby reversed and the instant matter remanded for further proceedings consistent with this Order. Specifically, upon remand, the ALJ should fully evaluate the record evidence and properly determine whether Plaintiff's severe cervical spine disorder meets or equals the relevant Listing, and whether Plaintiff's impairments in combination meet or equal the relevant Listing. Furthermore, should the ALJ find it necessary to do so, the ALJ should provide a clearer analysis concerning Plaintiff's credibility.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 5, 2014